OPINION OF THE COURT
Charles J. Thomas, J.
Defendant was indicted for kidnapping and gun possession. The case was moved to trial and the jury was selected by October 23, 1995. On October 24, prior to opening statements, Court TV, pursuant to Judiciary Law § 218, applied to this court for TV coverage. Defense counsel objected, while the People initially took no definitive position and the court granted the application, in accordance with Judiciary Law § 218 (5) (a).
While the cameras were being set up, the court was advised that defendant, who was incarcerated at the time, refused to attend the trial and would not come out of the holding pens as long as the TV cameras were in the courtroom. The court adjourned the trial in order to hear oral arguments from counsel for Court TV, who were not present at the time.
Judiciary Law § 218 (3) (a) provides that application for coverage should be made seven days prior to commencement of the judicial proceedings. The statute provides that where circumstances are such that an applicant cannot reasonably apply seven or more days before the commencement of the proceedings, the presiding Trial Judge may shorten the time .period.
Court TV argues that Judiciary Law § 218 (3) (a) applies despite the fact that they did not give the seven-day notice, thus no consent is necessary. It claims the purpose of the seven-day rule was to provide notice to the parties and make it technically and procedurally feasible for the parties to consider how the cameras would be dealt with, i.e.: scheduling, the placing of cameras, and which portions would be excluded, etc.
In this case, the seven-day rule was not adhered to as Court TV claims they were unaware of the trial until October 23, the day before testimony was to begin, and they made their application as soon as possible. They claim trial commences for the purpose of this statute when opening statements begin, their argument being that since the voir dire cannot be shown, the language "commencement of proceedings” only makes sense by interpreting that phrase to be after jury selection, but *267 prior to opening statements. The court finds Court TV’s position to be totally inconsistent with CPL 260.30 prescribing that trial begins with the selection and swearing of the jury. Nothing in the Judiciary Law indicates otherwise.
The fact that the seven-day rule may be honored more in its breach does not alter the result when challenged. The seven-day rule gives the defendant a chance to question the jury as to their attitude towards cameras; and whether they believe the presence of the cameras somehow makes this defendant more important or newsworthy; or whether the presence of cameras will otherwise affect their ability to deliberate impartially. The statute is specific that application should be made seven days before selection of the jury is scheduled and the court must not short-circuit this procedural safeguard. Since, defendant did not consent to Court TV’s application, it must be denied.
In this case, however, defendant has taken the position that he does not want the cameras and will not attend the trial if cameras are allowed. Defendant has three reasons for objecting to the cameras: (1) he believes the cameras will influence the jury; (2) the cameras will intimidate witnesses; (3) he does not want to be on television, and will not attend the trial if cameras are allowed.
Court TV argues all these reasons have in essence been decided by the Legislature, for example, concerning witness intimidation; the statute provides jurors and witnesses need not be shown (Judiciary Law § 218 [7] [d], [e], [j]). They claim experience and surveys have shown that the cameras are unobtrusive. Most importantly and above all they claim defendant should not, by the mere expediency of saying "I do not want to be on television”, be permitted to thwart what is clearly the law of this State.
Court TV argues the Legislature did not intend and would not tolerate a veto by the defendant and specifically Judiciary Law § 218 (5) (a) so provides. Court TV argues that defendant can waive his right to attend his trial and cites the seminal case of People v Parker (57 NY2d 136, 140), which holds that a defendant waives his Sixth Amendment right to confrontation by his "voluntary absence”, provided the court has clearly explained to a defendant that he has certain rights and determines that such waiver is voluntary.
The People, who risk a reversal of any conviction, and would be the "losing” side in an appeal situation were this defendant to be convicted and then reversed, now oppose the application *268 inasmuch as Court TV did not make use of the seven-day rule. Going beyond the seven-day rule, the People oppose the application inasmuch as should defendant not be present, there would be a difficulty during the course of the trial to make an identification. Here, there are at least three identifications which would have to be made, and forcing defendant to come out whether in leg irons or by whatever force is necessary, changes the whole aspect of the trial.
Parker (supra) and its progeny have involved situations where defendant was either explicitly advised his failure to attend would be a waiver or his obvious conduct in not appearing implied a waiver and implicit throughout was the notion that defendant was obstructing or delaying the orderly administration of justice or defying the process of law none of which are applicable here.
This court will not permit the proceedings to be televised, where a defendant takes a position that he is being forced to give up his Sixth Amendment right of confrontation by being directed to proceed, regardless whether the seven-day rule has been adhered to.
This court agrees that the public has a right to know, but the defendant’s unequivocal right to be present at his trial, should he so desire, should not be subjugated to an inquisitive public.
Accordingly, the court amends its previously granted order permitting audio-visual coverage and denies same.